UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LARRY J. TRAHAN                    CIVIL ACTION NO. 6:17-1133

VERSUS                             MAGISTRATE JUDGE WHITEHURST

U.S. COMMISSIONER,                 BY CONSENT OF THE PARTIES
SOCIAL SECURITY
ADMINISTRATION

## MEMORANDUM RULING AND ORDER

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, the Commissioner's decision is REVERSED AND REMANDED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Larry J. Trahan, fully exhausted his administrative remedies prior

to filing this action in federal court. The claimant filed an application for disability

insurance benefits ("DIB"), alleging an onset date of April 2, 2015.[1] His application

was denied on June 12, 2015.[2] The claimant requested a hearing, which was held on

July 28, 2016 before Administrative Law Judge Kim A. Fields.[3] The ALJ issued a

---

[1]     Rec. Doc. at 33. The record shows that the claimant has acquired sufficient quarters
of coverage to remain insured through December 31, 2018.

[2]     Tr. 91-94.

[3]     The hearing transcript is found at Tr. 33-44.

decision on September 21, 2016,[4] concluding that the claimant has not been under a disability from April 2, 2015 through the date of the ALJ's decision.

The claimant asked for review of the decision, and the Appeals Council denied this request on July 28, 2017.[5]  Therefore, ALJ Fields's September 21, 2016 decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. §405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born in June 1967 and was 47 years old on his alleged onset date of April 2, 2015.  He is considered a younger individual under the Act.   The claimant is a high school graduate and attended one year of trade school during high school for auto mechanics, but did not complete the course work.  He worked in the oilfield for thirteen years, but quit that job because he could no longer climb.  The claimant then tried working in the apartment business for approximately one year, but the work was too hard on his feet.  The claimant subsequently worked as a car salesman at a used car lot for eighteen years.  He stopped working this job because he was having trouble with his legs and back.

---

[4]      Tr. 48-77.

[5]      Tr. 1-3.

The claimant alleges that he has been disabled since April 2, 2015 due to his club feet with triple orthodesis fusion, arthritis in his back and hip, degenerative spinal problems, and spurs on discs in his back.[6]

## ANALYSIS

### A. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[7] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[9]

---

[6] Tr. 167.

[7] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[8] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[9] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[10] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[11] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[12] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[13]

## B.   Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[10]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[11]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[12]     *Martinez v. Chater*, 64 F.3d at 174.

[13]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

both insured and disabled, regardless of indigence.[14]  Every individual who meets

certain income and resource requirements, has filed an application for benefits, and

is determined to be disabled is eligible to receive Supplemental Security Income

("SSI") benefits.[15]

The term "disabled" or "disability" means the inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."[16]  A

claimant shall be determined to be disabled only if his physical or mental impairment

or impairments are so severe that he is unable to not only do his previous work, but

cannot, considering his age, education, and work experience, participate in any other

kind of substantial gainful work which exists in significant numbers in the national

economy, regardless of whether such work exists in the area in which the claimant

lives, whether a specific job vacancy exists, or whether the claimant would be hired

if he applied for work.[17]

---

[14]     See 42 U.S.C. § 423(a).

[15]     42 U.S.C. § 1382(a)(1) & (2).

[16]     42 U.S.C. § 1382c(a)(3)(A).

[17]     42 U.S.C. § 1382c(a)(3)(B).

## C.     Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[18]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[19]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[20] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[21]  The claimant's residual functional capacity is used at the fourth step to

---

[18]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[19]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[20]     20 C.F.R. § 404.1520(a)(4).

[21]     20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[22]

The claimant bears the burden of proof on the first four steps.[23] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[24] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[25] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[26] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[27]

---

[22]    20 C.F.R. § 404.1520(e).

[23]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[24]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[25]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[26]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[27]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

**D.    THE ALJ'S FINDINGS AND CONCLUSIONS**

On appeal to this Court is ALJ Fields's September 21, 2016 decision that the claimant is not disabled because he has the functional capacity to perform sedentary work with certain modifications, including the jobs of telephone solicitor and check cashier.[28]

**E.    THE ALLEGATIONS OF ERROR**

Mr. Trahan challenges the ALJ's failure to properly apply controlling law in evaluating the medical opinions of Dr. Charles Olivier, the claimant's treating physician; failure to apply controlling law in evaluating the claimant's credibility; and failure to properly assess the claimant's residual functional capacity.

**Medical Background**

Dr. Olivier is the claimant's treating physician, having treated him from approximately April 15, 2015 to November 2016. Initially, the claimant was evaluated by Dr. Olivier for bilateral leg pain, low back pain, and hip pain. The claimant was born with a left club foot, for which he underwent surgery. The claimant stated he had difficulty walking in the mornings. Examination of the claimant's back showed loss of lumbar lordosis and midline tenderness. The claimant had left foot numbness of the third, fourth, and fifth toes. He limped when walking

---

[28] Tr. 43.

and his left foot examination showed stiffness, diminished sensation at the third, fourth, and fifth toes, and was rigid. X-rays of the lumbar spine showed moderate degenerative changes, especially at the L2-3 level, and spurs on the superior end plates of L4 and L5. Bilateral hip x-ray showed a normal left hip, but probable subluxation of the right hip. On April 15, 2015, Dr. Olivier diagnosed the claimant with low back pain, pain in hip, lumbar/lumbosacral disc degenerative disease, club foot, and dysplasia of the right hip, and the claimant was prescribed Mobic and a back brace. Dr. Olivier opined that the claimant should be limited to light duty work and should "check into disability."[29]

On June 15, 2015, Dr. Olivier reported that the claimant was doing a little better and was responding well to Mobic and the use of the back brace. However, the claimant's diagnosis did not change, and Dr. Olivier again opined that the claimant was restricted to "light duty." At that time, Dr. Olivier prescribed a cane for walking.[30] On August 10, 2015, the claimant reported he was doing the same, yet on this date, Dr. Olivier opined that the claimant was restricted to "no duty."[31]

---

[29] Tr. 359-60.

[30] Tr. 274-75.

[31] Tr. 278-79.

On October 9, 2015, Dr. Oliver completed a Medical Source Statement, in which he reported the following restrictions: inability to sit for 6 hours in an 8-hour workday due to back and hip pain; inability to stand/walk for 2 hours in an 8-hour workday due to pain; limited to standing/walking for 15 minutes at one time; the need to alternate positions between sitting and standing every 15 minutes to alleviate pain and numbness; the need to use a cane or assistance device when engaging in occasional standing/walking; limited range of motion of the cervical spine; difficulty maintaining neck flexion for longer than 30 minutes at one time; lifting of 10 pounds or less; the need to elevate legs two feet high multiple times per day (hourly) with prolonged sitting; and the need to take unscheduled breaks during the workdays due to his impairments. Dr. Olivier reported that the claimant would be expected to miss work or leave early due to his impairments multiple times per week. Dr. Oliver further opined the claimant likely be "off task" 25% or more of the workday due to his symptoms interfering with his attention and concentration.[32]

In an updated Medical Source Statement completed by Dr. Olivier on July 20, 2016, Dr. Olivier reported that the claimant continued to have substantially similar functional limitations as stated in the October 2015 Statement, and continued to have

---

[32] Tr. 280-82.

these limitations through the date of completion of the form. On December 28, 2015, Dr. Olivier opined that the claimant, who was having the same pain, was "disabled."[33] On April 29, 2016, Dr. Olivier reported that the claimant had the same impairments and pain.[34]

Dr. Olivier's opinions are accompanied by the diagnostic testing the claimant underwent at his request. X-rays dated October 9, 2015 showed diffuse degenerative changes throughout the cervical spine, but worse at C3-4, C5-6 and C6-7.[35] Lumbar x-rays showed moderate degenerative changes, especially at L2-3, and spurs on superior end plates at L4 and L5.[36] The right hip x-ray revealed subluxation of the hip head, and that the right hip looked shorter.[37] Dr. Olivier's assessment was paresthesia of the skin, intervertebral lumbar disc degeneration, congenital deformities of the feet, and cervical spondylosis.[38]

On November 4, 2015, EMG/NCV testing revealed severe bilateral carpal tunnel syndromes ("CTS"), severe bilateral cubital tunnel syndromes, and bilateral

---

[33] Tr. 292-94.

[34] Tr. 284-86.

[35] Tr. 296, 317.

[36] Id.

[37] Id.

[38] Id.

ulnar entrapment at the wrists, as well as possible left C8 and C5 radiculopathy.[39]

On December 28, 2015, Dr. Olivier's examination revealed atrophy of the first web space of the left hand, positive Tinel's sign bilaterally, and decreased sensation to light touch in all fingers bilaterally.[40] Dr. Olivier's new diagnoses included spondylosis, cervical region; CTS; lesion of the ulnar nerve; and other lesions of the left upper limb median nerve.[41] X-rays of the left foot revealed calcification of the Achilles tendon and heel spur as well as multiple post-surgical changes. On February 29, 2016 and April 29, 2016, Dr. Olivier's clinical findings were consistent with prior examinations. Notably, the positive findings on the claimant's bilateral straight leg raise tests grew more severe (i.e., the degree at which pain was elicited decreased) over time. On December 18, 2015, it was 60 degrees bilaterally.[42] On February 29, 2016, it was 60 degrees on the right and 45 degrees on the left.[43] On April 4, 2016, it was 50 degrees on the right and 45 degrees on the left.[44]

---

[39] Tr. 302.

[40] Tr. 292-94.

[41] Id.

[42] Tr. 311.

[43] T. 288.

[44] Tr. 302.

At the request of the ALJ, Dr. John Anigbogu, who specializes in pain management and rehabilitation, completed a Medical Interrogatory of Physical Impairments (Adults) on August 6, 2016. Notably, Dr. Anigbogu did not examine the claimant. Dr. Anigbogu assessed the claimant's residual functional capacity as follows: continuous lifting and/or carrying of up to 10 pounds; frequent lifting and/or carrying of up to 20 pounds; unlimited sitting at one time or total; standing for up to 3 hours at one time; walking for up to 3 hours at one time, standing a total of 3 hours in an 8-hour workday; walking for 3 hours in an 8 hour workday; continuous bilateral reaching (overhead and all other); frequent bilateral handling; occasional bilateral fingering and feeling; and frequent bilateral pushing and pulling. Dr. Anigbogu also opined that the claimant can frequently operate foot controls with both feet; can continuously climb stairs and ramps; occasionally climb ladders or scaffolds; and continuously balance, stoop, kneel, crouch, and crawl.[45]

In his decision, the ALJ stated he gave "little weight" to Dr. Olivier's October 2015 Medical Source Statement, which imposed significant limitations such that the claimant would not be capable of performing even sedentary work, on grounds the Statement was not supported by the medical evidence in the record. Rather, the ALJ gave "great weight" to the April 2016 opinion of Dr. Anigbogu, finding Dr. Anigbogu

_____

[45] Tr. 356-63.

was an impartial medical expert who reported that the claimant suffered from bilateral carpal tunnel and cubital tunnel syndrome, chronic low back pain, and hip pain and obesity, but nevertheless was able to perform light work with difficulties in repetitive function.

### Failure to properly evaluate Dr. Olivier's opinions

The claimant argues that the ALJ erred in giving greater weight to the opinion of Dr. Anigbogu than the opinion of Dr. Olivier on grounds Dr. Olivier is the claimant's treating physician, while Dr. Anigbogu merely answered medical interrogatories and never examined the claimant. The claimant also argues the ALJ erred as a matter of law in not following the regulatory guidelines in discounting Dr. Olivier's opinions.

As a general rule, the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), *citing Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

... other substantial evidence." *Newton*, 209 F.3d at 455, *citing Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995), *citing* 20 C.F.R. §404.1527(d)(2). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir.1994).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id.* "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* The treating physician's opinions are not conclusive. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

The Social Security Regulations provide as follows:

When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6)

of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527. The following factors are considered when an ALJ declines

to give controlling weight to a claimant's treating physician:

(1)    the physician's length of treatment of the claimant,
(2)    the physician's frequency of examination,
(3)    the nature and extent of the treatment relationship,
(4)    the support of the physician's opinion afforded by the medical evidence of record,
(5)    the consistency of the opinion with the record as a whole; and
(6)    the specialization of the treating physician.

*Id.*

Section 404.1527 is construed in Social Security Ruling ("SSR") 96–2p, which

states:

[A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added). SSR 96–5p

provides, with respect to "Residual Functional Capacity Assessments and Medical

Source Statements," that "Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 . . . providing appropriate explanations for accepting or rejecting such opinions." SSR 96–5p, 61 F.R. 34471, 34474 (July 2, 1996).

Several federal courts have concluded that an ALJ is <u>required</u> to consider each of the §404.1527(c) factors when the ALJ intends to reject or give little weight to a treating specialist's opinion. *See, e.g., Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2nd Cir.1998); *Goatcher v. U.S. Department of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995); *Dwyer v. Apfel*, 23 F.Supp.2d 223, 228 (N.D.N.Y.1998); *Amidon v. Apfel*, 3 F.Supp.2d 350, 355–56 (W.D.N.Y.1998); *McDonald v. Apfel*, No. CA 3–97–CV–2035–R, 1998 WL 159938, *8 (N.D.Tex. Mar. 31, 1998). The Fifth Circuit holds that an ALJ is required to consider each of the §404.1527(d) factors before declining to give <u>any weight</u> to the opinions of the claimant's treating specialist. *Newton*, 209 F.3d at 455.

In *Newton*, the claimant was diagnosed by her treating physician, Raymond M. Pertusi, D.O., a rheumatologist, with swollen and painful joints, pleuritic chest pain, fevers, fatigue, a rash, and kidney or urinary problems. 209 F.3d at 452. Dr. Pertusi submitted an assessment finding the claimant had the functional capacity for no work. *Id.* at 453-54. In his decision, the ALJ stated that Dr. Pertusi's opinions regarding the

claimant's residual functional capacity, specifically his opinion that Newton could not perform even sedentary work during the period of claimed disability, were not entitled to "great weight." The ALJ found Dr. Pertisu's opinion regarding residual functional capacity was not reliable because it was insufficiently substantiated by clinical or diagnostic evidence, and thus was conclusory, and questioned Dr. Pertusi's credibility. The ALJ ultimately concluded that Newton retained the residual functional capacity to perform the exertional requirements of a full range of sedentary work. On appeal, the claimant argued the ALJ failed to properly apply the regulations in discounting the opinion of his treating physician. Agreeing with the claimant, the court noted:

> This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. *See and compare, e.g., Spellman v. Shalala*, 1 F.3d 357 (5th Cir.1993). Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. See and compare, e.g., Prosch v. Apfel, 201 F.3d 1010 (8th Cir.2000). Instead, this is a case where the ALJ summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant. At best, the record was incomplete, and Pertusi could have provided clarification or supplementation, if requested. This case is reversed and remanded for further consideration consistent with this decision.

209 F.3d at 458.

Here, the Commissioner argues the ALJ did not commit error in failing to identify and discuss all four regulatory factors for discounting the opinions of a treating physician, on grounds such an assessment is not required where the ALJ merely gives less weight to the opinion of a treating physician, and does not reject it outright. In support of this argument, the Commissioner cites *Qualls v. Astrue*, 130 Fed. App'x 461 (5th Cir. 2009) for the proposition that the *Newton* court limited its holding to cases where the ALJ *rejects* the sole relevant medical opinion before it.

After a review of both the *Newton* and *Qualls* cases, this Court finds the facts of the instant case more closely align with *Newton*. Most significantly, in *Qualls*, the claimant had five treating physicians, and the ALJ gave greater weight to the opinion of only one of the physicians, while substantial evidence in the record supported the opinions of at least some of the other treating physicians. Noted the court in *Qualls*:

> The ALJ was presented with substantial evidence which contradicted Dr. Steuer's opinion. Qualls was seen by five treating physicians and, despite evidence that she informed several doctors that she sought disability benefits, she obtained a Medical Source Statement from only one—Dr. Steuer. From October to December 2002, Dr. Steuer documented excellent improvement in Qualls's symptoms and indicated that she had only moderate difficulty in performing the activities of daily life. Nevertheless, the Medical Source Statement he filled out two months later stated that Qualls was incapable of performing even sedentary work. Nothing in Qualls's medical record explains the sudden change and the inconsistency between Dr. Steuer's Medical Source Statement and his clinical notes.

339 F. App'x at 466.

The facts of this case are much more similar to the facts in *Newton*, wherein the claimant had only one treating physician who opined that the claimant can perform no work, while a non-examining physician reported that the claimant perform at a higher exertional level. As the ALJ did in *Newton*, ALJ Fields gave "little weight" to Dr. Olivier's opinion, and great weight to the opinion of Dr. Anigbogu, who did not examine the claimant and who merely completed a medical interrogatory. As the court stated in Newton, ". . . this [is not] a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." 209 F.3d at 458. Instead, this is a case where the ALJ summarily rejected the opinion of Dr. Olivier, based only on the testimony of a non-specialty medical expert who had not examined the claimant.

The *Newton* court further stated, "the record was incomplete, and Dr. Pertusi could have provided clarification or supplementation, if requested." 209 F.3d at 458. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996), *citing Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). Here, the ALJ was faced with medical records from the claimant's treating

physician, which indicated numerous complaints of pain related to the claimant's club foot, for which he had surgery, as well as diagnostic evidence corroborating the claimant's complaints of low back and hip pain. While this Court acknowledges that Dr. Olivier's Medical Source Statement is relatively scant in terms of support for his opinions, Dr. Olivier is the only treating physician of record and is the doctor most personally familiar with the claimant's condition and complaints. At best, the ALJ was under a duty to seek clarification of Dr. Olivier's opinions, or supplementation for Dr. Olivier's medical opinions before making his finding of non-disability.

This Court concludes the ALJ, in effect, declined to given any weight to the opinions of Dr. Olivier. Under these circumstances, the ALJ was required to consider each of the §404.1527(d) factors before rejecting those opinions. *Newton*, 209 F.3d at 455. Considering the foregoing, the Court concludes the ALJ erred in giving "great weight" to the medical opinions of Dr. Anigbogu, a non-examining physician, and giving essentially no weight to the opinions of Dr. Olivier, the claimant's treating physician, without engaging in an assessment of the regulatory factors as required under Fifth Circuit jurisprudence. At the very least, the Court finds the ALJ should have sought clarification of Dr. Olivier's opinions, or supplementation for Dr. Olivier's medical opinions, before making his finding of non-disability.

## Claimant's credibility

The claimant argues there is not substantial evidence in the record to support the ALJ's finding that the claimant was less than credible in describing his complaints of pain. The ALJ made the following conclusion regarding the claimant's complaints of pain and overall credibility in his decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision.

The ALJ is entitled to resolve conflicts in evidence. *Quintanilla v. Astrue*, 619 F. Supp.2d 306, 321 (S.D. Tex. 2008) (J. Jack), *citing Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (citation omitted). If a plaintiff's symptoms are not founded in objective medical evidence, then the ALJ must make a credibility determination of plaintiff's complaints. *Myers v. Apfel*, 238 F.3d 617, 620–21 (5th Cir.2001) (per curiam). In making this determination, the ALJ must make every effort to obtain available information including, among other things, taking into consideration evidence concerning duration, frequency and intensity of symptoms, and type, dosage, effectiveness, and side effects of medication taken for symptoms. *See* 20 C.F.R. §404.1529(c)(3). In addition, if a claimant alleges a greater impairment than

can be shown by objective medical evidence alone, the ALJ is to carefully consider the individual's statements about symptoms along with the record to reach a conclusion about the credibility of the individual's statements. SSR 96–7p, 1996 WL 374186, at *1. "The ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986), *citing Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir.1983). Significantly, the Fifth Circuit has stated that "cursory, boilerplate language about carefully considering the entire record does not constitute an explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017).

Here, the ALJ found the claimant was physically able to do sedentary work, with certain modifications. The claimant argues the ALJ's opinion fails to take into consideration the objective medical evidence in the record that supports his complaints of pain and which were confirmed by Dr. Olivier, including the claimant's club left foot, which eventually caused bilateral leg, low back and hip pain, all of which undercut the ALJ's conclusion. The claimant specifically points to Dr. Olivier's August 10, 2015 examination, which revealed positive straight leg raise, positive tenderness, loss of lordosis, numbness of left foot, limited range of motion of the left hip, limp on walking with occasional click, diminished sensation of the left foot, and decreased sensation and strength of the upper right extremity, as well as the

claimant's limitations in range of motion of the cervical spine, which would cause him difficulty maintaining neck flexion for longer than 30 minutes at a time. Dr. Olivier cited the claimant's need to keep his legs elevated two feet multiple times per day. Dr. Olivier additionally opined that the claimant would miss work or leave early multiple times per week due to his impairments.

The Commissioner stresses that the claimant was treated conservatively by Dr. Olivier and that the claimant admitted his medication helped his pain, even at doses below that prescribed by Dr. Olivier.

The record shows that the claimant's impairments – including disorders of the cervical and lumbar spine, dysfunction of the major joints, bilateral carpal tunnel syndrome, and obesity – were found by the ALJ to be severe and could reasonably cause the pain the claimant complained of. These impairments are well-documented by Dr. Olivier, and are supported by diagnostic imaging and other tests conducted at the request of Dr. Olivier. By concluding in boilerplate language that the claimant's complaints of pain are not consistent with the medical evidence of impairments in the record, however, and in relying on a functional assessment of a non-examining doctor, the ALJ appears to have engaged in "picking and choosing" only the evidence that supports his position. *Loza v. Apfel*, 219 F.3d 378, 393–94 (5th Cir. 2000), *citing Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir.1984); *Garfield v. Schweiker*, 732

F.2d 605, 609 (7th Cir.1984); *Green v. Shalala*, 852 F.Supp. 558, 568 (N.D.Tex.1994); *Armstrong v. Sullivan*, 814 F.Supp. 1364, 1373 (W.D.Tex.1993).

Furthermore, inasmuch as the ALJ relied more on Dr. Anigbogu's assessment of the claimant's condition than he relied on the assessment of Dr. Olivier – and this Court's conclusion that such was error under the circumstance of this case – the Court concludes the ALJ's assessment of the claimant's credibility is not supported by substantial evidence in the record.

### Residual Functional Capacity

With respect to the ALJ's assessment of his residual functional capacity, the claimant argues the ALJ's RFC assessment is flawed because it does not include a limitation that the claimant must elevate his legs, his need for numerous breaks throughout a workday, his tendency to be off-task during the workday, and the necessity of missed work to accommodate his impairments.

ALJ Fields relied primarily on the residual functional capacity assessment of Dr. Anigbogu in making his determination of non-disability, and largely ignored the RFC assessment of Dr. Olivier. The Commissioner argues that although Dr. Olivier opined that the claimant should elevate his legs at least 2 feet high multiple times per day, this limitation is based on the claimant's subjective complaints rather than the objective medical evidence. The Commissioner essentially suggests that Dr. Olivier

is "leaning over backwards" to support the claimant's application for disability, and that there is no medical evidence in the record to support such a limitation. The Commissioner makes the same arguments with respect to the claimant's contention that he would be off-task during a workday, and would need to miss several days a week due to his limitations.

Inasmuch as this Court has already concluded that the ALJ erred in discounting the opinions of the claimant's treating physician and gave greater weight to the opinion of a non-examining physician – the latter upon which the ALJ's assessment of RFC was largely based – this Court concludes there is not substantial evidence in the evidence to support the ALJ's RFC assessment. As set forth in this ruling, the claimant has presented objective medical evidence that supports his complaints of pain and impairment, and the ALJ gave little weight to those complaints. Considering that the ALJ did not factor some of those complaints into the assessment of the claimant's RFC, and did not request clarification of or supplementation for, some of the opinions of Dr. Olivier, the Court concludes the ALJ's RFC assessment was flawed.

Considering the foregoing, the undersigned concludes the ALJ's determination that the claimant can perform sedentary work is not supported by the record, and this matter should be remanded for further development of this portion of the record.

## CONCLUSION AND RECOMMENDATION

Thus, for the reasons stated herein, **IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED**.

Signed in Lafayette, Louisiana, this 28th day of March, 2019.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**